Filed 10/28/25  P. v. Lopez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H052380 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC753124) |
| v. | |
| PAUL URQUIDEZ LOPEZ, | |
| Defendant and Appellant. | |

In 2008, a jury convicted appellant Paul Urquidez Lopez of attempted murder, two first degree burglary charges, assault with a deadly weapon, resisting arrest, and giving a false name to a peace officer.  The jury also found true a personal use firearm enhancement under Penal Code section 12022.5[1] and a great bodily injury firearm enhancement under section 12022.53, subdivision (d) (section 12022.53(d)).  Of relevance for this appeal, the section 12022.53(d) firearm enhancement adds 25 years to life to a criminal sentence.  (*People v. Tirado* (2022) 12 Cal.5th 688, 695 (*Tirado*).)

The trial court found true the allegations that Mr. Lopez had a past "strike" conviction (strike prior) and a past serious felony conviction (felony prior), and had served a prior prison term (prison prior).  The court then sentenced Mr. Lopez to 14 years

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

consecutive to 39 years to life. This court affirmed this judgment on appeal. (*People v. Lopez* (Jan. 12, 2010, H032952) [nonpub. opn.] (*Lopez*).)

In July 2024, the trial court resentenced Mr. Lopez under section 1172.75. The court struck the prison prior and felony prior sentencing enhancements and reduced the determinate portion of the sentence, but denied Mr. Lopez's request to strike the section 12022.53(d) firearm enhancement. The trial court imposed a new sentence of four years consecutive to 39 years to life.

Mr. Lopez appeals from the resentencing order, arguing that the trial court abused its discretion and violated his due process rights by not striking or reducing the section 12022.53(d) firearm enhancement. We find no error in the court's new sentence and affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts Underlying Mr. Lopez's Convictions[2]

In December 2006, Carlos Aguilar was living in a San Jose apartment with his friend Martel Alvarez and three uncles: Jose, Daniel, and Omar Menjivar. On December 26, Carlos,[3] Martel, and Jose were at the apartment when three men entered the apartment. The intruders beat Carlos with their fists, a bottle, and possibly chairs for five or six minutes.

Jose went to the bedroom to call the police, and the assailants then fled. After police and paramedics responded, Carlos was taken to the hospital with head wounds that required staples to close.

About 10 minutes after the police left (but still on December 26), the men who attacked Carlos returned. When no one answered, they kicked in the apartment's front

---

[2] Mr. Lopez's appeal is limited to the trial court's resentencing decision. We therefore discuss the underlying facts of his crimes only to provide context.

[3] We use first names for the sake of clarity; no disrespect is intended.

2

door.  Two of the assailants were wielding knives and demanding money.  The third assailant (later identified as Mr. Lopez) put a gun to Jose's head, accused him of calling the police, and told him he was going to die.  Mr. Lopez then shot Jose in the head near Jose's jawbone.  Jose was taken to the hospital, where he underwent surgery and was hospitalized for eight or nine days.

Five days later, police responded to a domestic disturbance call and found Mr. Lopez arguing with his girlfriend in the street.  The officer asked both of them to approach, but Mr. Lopez turned and began to run away.  The officer grabbed Mr. Lopez, but he brushed her off and continued to run.  After deploying her taser twice, the officer eventually subdued Mr. Lopez with the help of another officer.  Mr. Lopez gave police a false name during questioning.

### B.  Verdict and Sentencing

Following an eight-day jury trial in late 2007 and early 2008, the jury returned guilty verdicts against Mr. Lopez on all charged counts and enhancements, including the section 12022.53(d) firearm enhancement.  Mr. Lopez waived his right to a jury trial on the prior conviction sentencing enhancement allegations (i.e., the strike prior, felony prior, and prison prior allegations), so the trial court tried them.  After a sentencing hearing in mid-January 2008, the court found the three prior conviction sentencing enhancements to be true.  In April 2008, the trial court sentenced defendant to 14 years consecutive to 39 years to life.

### C.  First Appeal

Mr. Lopez appealed his conviction.  In his appeal, he argued that he received ineffective assistance of counsel because his trial attorney:  a) "failed to object to improper testimony concerning Jose's reaction to [Mr. Lopez's] line-up photograph, specifically that Jose's heart monitor 'shot up' when [Mr. Lopez's] photograph was shown"; and b) "because his trial attorney failed to prevent or limit the introduction of

3

gang evidence." (*Lopez, supra*, H032952, at p. 4.) This court did not accept those claims of error and affirmed Mr. Lopez's conviction.

### D. Resentencing

#### 1. *Petition and Briefing*

In March 2023, Mr. Lopez filed a petition for recall of his sentence and resentencing. The trial court appointed counsel for Mr. Lopez in May 2023, as required by law. (See § 1172.75, subd. (d)(5).) New counsel for Mr. Lopez withdrew his March 2023 petition and filed a new one.

In this new petition, Mr. Lopez argued that: a) the prison prior sentencing enhancement was invalid due to a change in law; b) the trial court should strike the felony prior sentencing enhancement because he was not a public safety risk; and c) because he was not a public safety risk, the trial court also should strike the section 12022.53(d) firearm enhancement. Mr. Lopez argued that he had changed while in prison, as shown by the classes he took and his lack of violence in prison. He advocated for a new sentence of eight years, eight months consecutive to 14 years to life, which would have been a significant reduction from his original sentence.

In the People's written response, they conceded that the prison prior sentencing enhancement must be stricken but opposed all other relief sought by Mr. Lopez. The People argued that "imposing the enhancements is in the interest of justice and [Mr. Lopez] continues to be a threat to public safety if released early." The People detailed Mr. Lopez's extensive criminal history, dating back to 1989. They also asserted that "[Mr. Lopez's] performance in prison does not justify treating him with any leniency," pointing to various incidents and disciplinary issues Mr. Lopez has had while incarcerated and his ongoing gang activities while in prison.

4

## 2.    *Testimony at Hearing*

The trial court held a two-day resentencing hearing under section 1172.75, subdivision (d) (section 1172.75(d)) in February and May 2024.  At that hearing, the People presented three witnesses and Mr. Lopez presented one witness.

The People's first witness was CDCR Correctional Officer Drew Bittner, who was an expert witness on prison gangs, prison gang culture, and prison validation procedures concerning gang affiliation.  Officer Bittner opined that Mr. Lopez had been a member of the Northern Structure / Nuestra Raza gang, and had "moved up" to become a current member of the Nuestra Familia (NF) gang.  Officer Bittner, who had personal familiarity with Mr. Lopez, discussed the information used to validate Mr. Lopez as a prison gang member, such as:  his tattoos of a Huelga bird (signifying membership in the Northern Structure) and a shaded-in North Star (signifying a high rank in the NF and that he had conducted a hit for the NF); material written by Mr. Lopez found in a validated Northern Structure member's cell; Mr. Lopez's apparent position of authority at the Santa Clara County main jail in March 2007; a "hit list" of rival inmates found in his cell in 2008; a "kite"[4] found in his possession discussing the Northern Structure's "manpower"; a roster of active Northern Structure members that included Mr. Lopez; and a directive written by Mr. Lopez prohibiting Northern Structure members from using prison laundry bags to communicate.  Multiple confidential informants also told prison officials that Mr. Lopez was a senior NF member.

Officer Bittner also testified that high-ranking NF members often have six to ten inmates acting as "bodyguards" for them—for instance, by walking with them in the prison yard to ensure that they get to their destination safely.

---

[4] As used by Officer Bittner, "kites" are small, coded handwritten notes used by inmates to communicate with each other without detection by law enforcement.

The People's second witness was Victor Cabrera, a Santa Clara County sheriff's deputy who worked in the Santa Clara County main jail. He was working at the jail on May 2, 2023 and June 19, 2023, when Mr. Lopez was temporarily transferred from state prison. Deputy Cabrera noticed that when Mr. Lopez was outside of his cell, two or three other inmates typically accompanied him. Deputy Cabrera believed that the other inmates were guarding Mr. Lopez.

The People's final witness was Jason Dias, a deputy sheriff who was in the Santa Clara County jail intelligence unit. Deputy Dias reviewed surveillance videos of the behavior that Deputy Cabrera described. Deputy Dias spoke to a correctional intelligence task force member, who informed him that Mr. Lopez was a validated member of the NF gang. In Deputy Dias's opinion, the behavior he observed demonstrated that Mr. Lopez had a high level of status within the gang.

The defense presented one witness: Mr. Lopez. During his testimony, Mr. Lopez stated that he had avoided gang life until about the seventh grade. Because his father hit him and he was getting bullied, among other things, he believed he had no choice but to join a gang, and he did so by becoming a "Norteño." Mr. Lopez admitted that he was part of a gang when he committed the crimes in this case. He said he was drunk when he committed these crimes.

Mr. Lopez explained that he had not been involved in gang activities since 1994, when he was sent to solitary confinement. He said he was validated as a gang member without his knowledge, and that prison guards planted an NF roster in his cell when prison authorities were trying to validate him. Mr. Lopez denied being active with the Northern Structure or NF or having "bodyguards" at the jail; he said he did get respect from other inmates because he's older and has been in prison for a long time. He stated that he is not involved in gangs because he is trying to go home, but that if he were not seeking release, he "would probably be stabbing people."

6

Mr. Lopez also testified about the programming he has done in prison: Narcotics Anonymous, Alcoholics Anonymous, anger management, and self-help classes. He testified that he is remorseful for the crimes that he committed. He also explained that his violations of prison rules were long ago and not violent.

### 3. *Trial Court's Decision*

Following testimony, the parties provided argument. The defense argued that the trial court should strike all enhancements, including the section 12022.53(d) firearm enhancement, and make Mr. Lopez's sentence purely determinate because: a) Mr. Lopez was remorseful about his crimes; b) the crimes at issue were committed years ago; and c) Mr. Lopez did some programming while in prison, and language and learning differences explained why he didn't do more. Mr. Lopez's attorney argued that the prosecution's evidence did not establish that Mr. Lopez was "a big shot . . . in the prison gang world."

The People argued that Mr. Lopez was a high-ranking NF member, as shown by the People's witnesses at the resentencing hearing, and thus a public safety risk. The prosecution highlighted Mr. Lopez's testimony that he would be stabbing people if he were not seeking release. The prosecution also asserted that Mr. Lopez's prison programming was minimal and that Mr. Lopez had not shown true insight or remorse for his crimes. The People noted that if the trial court were to strike the felony prior sentencing enhancement and the section 12022.53(d) firearm enhancement, Mr. Lopez would be eligible for parole immediately and would be evaluated for release in the near term. The People therefore opposed all of Mr. Lopez's resentencing requests except to strike the one-year prison prior sentencing enhancement.

On July 9, 2024, the trial court resentenced Mr. Lopez to four years consecutive to 39 years to life. Specifically, the court imposed the same seven-years-to-life sentence for attempted murder, which it doubled to 14 years to life under the Three Strikes law. The

trial court declined to strike the section 12022.53(d) firearm enhancement, which added 25 years to life to the indeterminate portion of Mr. Lopez's sentence. The trial court also imposed a reduced determinate term of four years by: a) selecting the mitigated term for one of the burglary counts; b) imposing and staying the middle term for the other burglary count; c) imposing and staying the mitigated term for the assault count; d) staying the punishment for the section 12022.5 firearm enhancement; and e) striking the prison prior and felony prior sentencing enhancements.

In making this decision, the trial court recognized its discretion to strike or reduce the section 12022.53(d) firearm enhancement. The court ultimately declined to exercise that discretion, noting that Mr. Lopez's "failure to distance himself from a prison gang suggests to the Court that he does still pose a danger to the community if released today and, therefore, cannot exercise its discretion on that count."

Mr. Lopez timely appealed his new sentence.

## II. DISCUSSION

Mr. Lopez argues that the trial court committed reversible error by not striking the section 12022.53 firearm enhancement. He primarily argues that the trial court erred in its "danger to public safety" analysis under section 1385, subdivision (c) (section 1385(c)) by assessing Mr. Lopez's current dangerousness, even though he might not be released for many years, depending on what the Board of Parole Hearings were to decide. Mr. Lopez also argues that the trial court's refusal to strike this enhancement violates his federal due process rights. Finally, he claims the trial court abused its discretion by not imposing a lesser firearm enhancement. The People disagree with all of these arguments and also claim all of them are forfeited.

We address these issues below, but first provide an overview of section 1172.75(d) resentencing proceedings and a trial court's discretion under section 1385(c) to strike or reduce a section 12022.53(d) firearm enhancement.

8

## A.     Scope of Resentencing

All parties, including the trial court below, agree that under section 1172.75, subdivision (a), Mr. Lopez's prison prior sentencing enhancement—which originally had been imposed and not stayed—became legally invalid and must be stricken.  When a sentence is recalled to strike an invalid prison prior sentencing enhancement, the trial court must, as the court did here, conduct a full resentencing.  (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402 (*Monroe*).)

Resentencing under section 1172.75(d) "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety.  Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed."  (§ 1172.75, subd. (d)(1).)

The court must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  (§ 1172.75, subd. (d)(2).)  In doing so, "[t]he court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."  (*Id.*, subd. (d)(3).)

Section 1172.75(d) "vests the superior court with broad discretion based on an inherently factual inquiry."  (*People v. Garcia* (2024) 101 Cal.App.5th 848, 856-857.)  We thus review for an abuse of discretion a superior court's resentencing decision under section 1172.75(d).  (*Id.* at p. 856.)

9

**B.  Striking or Reducing a Section 12022.53(d) Firearm Enhancement**

In the interests of justice, a court may dismiss or completely strike a section 12022.53(d) firearm enhancement under section 1385(c).  (§ 12022.53, subd. (h).)  The court also may strike a section 12022.53(d) firearm enhancement and "impose a lesser uncharged statutory enhancement instead."  (*Tirado, supra,* 12 Cal.5th at p. 692.)  This discretion may be exercised at a section 1172.75(d) resentencing, among other occasions.  (See *Monroe, supra,* 85 Cal.App.5th at p. 402.)

Section 1385(c)(1) states that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  A court exercising its discretion under that provision "shall consider and afford great weight to evidence offered by the defendant to prove that any of the [enumerated] mitigating circumstances . . . are present."  (*Id.*, subd. (c)(2).)  "Proof of the presence of one or more of [the enumerated mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  (*Ibid.*)  The statute defines "endanger[ing] public safety" to mean "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (*Ibid.*)

We review for an abuse of discretion a trial court's denial of a motion to dismiss or strike an enhancement under section 1385(c).  (*People v. Flores* (2021) 63 Cal.App.5th 368, 376; see *People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).)

**C.  Forfeiture**

The People argue that Mr. Lopez's arguments are forfeited because he did not make them at the resentencing hearing.  Mr. Lopez asserts he made these arguments to the trial court and thus did not forfeit them.

A party generally forfeits a claim of sentencing error by failing to raise it in the trial court below.  (*People v. Scott* (1994) 9 Cal.4th 331, 351.)  Forfeiture will apply to

"claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices," including "cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or to give a sufficient number of valid reasons." (*Id*. at p. 353.) This includes failing to raise a specific argument for relief under section 1385(c). (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724.)

Here, Mr. Lopez's counsel at the resentencing hearing never asked the trial court to reduce the 12022.53(d) firearm enhancement to a lesser enhancement. That argument hence is forfeited.[5]

That leaves two other arguments to address. First, Mr. Lopez argues here that the trial court wrongly relied upon a factually incorrect assumption (specifically, that Mr. Lopez would be released immediately if all enhancements, including the section 12022.53(d) firearm enhancement, were struck) when performing its "danger to public safety" analysis under section 1385(c). We find that Mr. Lopez's counsel addressed this assumption in the trial court (italics added):

> "As a result, *even if the Court were to stay punishment on all the other charges and enhancement allegations, CDCR would still not automatically release Mr. Lopez, as he would then serve a 7-life sentence*. According to the CDCR Inmate Locater website, Mr. Lopez currently has a tentative date for a parole hearing of December of 2032. Thus, were the Court to alter Mr. Lopez's sentence and resentence him to a term of l4-life, consecutive to 8 years, 8 months, all this would do in actual fact is advance his parole date from December of 2032, to a date in the mid-2020's. By so doing, the Court would help to convince Mr. Lopez that staying out of trouble is the

---

[5] As discussed later in this opinion, even if this argument had not been forfeited, it fails on the merits.

most important thing he could do. As he's stayed violence-free for the past l7 years, the Court in granting his motion would in no way endanger public safety."

We find this discussion to "fairly apprise[] the trial court of the issue it is being called upon to decide." (*People v. Scott* (1978) 21 Cal.3d 284, 290.) We therefore will address this argument on the merits.

Mr. Lopez also argues that this alleged error by the trial court also violated his federal due process rights. *People v. Partida* (2005) 37 Cal.4th 428, 435-439, permits this due process argument on appeal even if it had not been made in the trial court. We hence will address this argument on the merits as well.

**D. "Danger to Public Safety"**

Mr. Lopez's primary argument on appeal is as follows. *First*, the trial court wrongly assumed that if it struck the section 12022.53(d) firearm enhancement along with the other resentencing changes it made, Mr. Lopez would be released "today," when in fact, the Board of Parole Hearings would still have to approve his release from prison. *Second*, the trial court wrongly analyzed whether Mr. Lopez posed a "danger to public safety" as of today, instead of when he might be released in the future. And *third*, these errors prejudiced Mr. Lopez, thus requiring reversal.

1. *Alleged Material Factual Error by Trial Court*

During the sentencing hearing, the People informed the trial court that if it struck the felony prior and 12022.53(d) enhancements, Mr. Lopez would be eligible for parole immediately and that the Board of Parole Hearings soon would evaluate him for release. This point was not contested by Mr. Lopez's counsel, as shown by counsel's quoted statement above. Thus, the trial court was aware that if it struck both of these enhancements, Mr. Lopez would be eligible for release in the near future.

12

The trial court later said:

"[W]hile Mr. Lopez has made substantial progress, the testimony of both the CDCR expert and Mr. Lopez suggests that he has not yet reached a place of self-reflection where the Court can exercise its discretion as to that enhancement. The Court certainly leaves the door open for Mr. Lopez to return to court under 1172.1 when he has engaged in more rehabilitative services.[6]  But his failure to distance himself from a prison gang suggests to the Court that he does still pose a danger to the community if released today and, therefore, cannot exercise its discretion on that count."

We do not view the trial court's reference to being "released today" as signifying a myopic focus on the risk to public safety Mr. Lopez posed on July 14, 2024, the date of this statement.  Rather, we view the trial court's discussion as recognizing that if the section 12022.53(d) firearm enhancement were struck (along with the felony prior sentencing enhancement), Mr. Lopez could be released in the near future and thus a public safety risk assessment should be made with that timeframe in mind.  None of the trial court's other comments during resentencing focused on "today" as the relevant timeframe for analysis.  We do not understand any of the trial court's comments to indicate a misunderstanding of applicable law, an error in fact or law, or an abuse of discretion.

### 2.    *Current Dangerousness v. Dangerousness at Time of Release*

We agree with Mr. Lopez that when deciding to strike an enhancement, the public safety inquiry under section 1385(c) requires a judge to evaluate both the current dangerousness of the defendant and the defendant's dangerousness at the time of possible release.  (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228 (*Gonzalez*).)

---

[6] We take no position on whether further rehabilitation alone would entitle Mr. Lopez to seek recall and resentencing under section 1172.1.

13

Here, as discussed above, if the trial court had dismissed the section 12022.53(d) firearm enhancement, Mr. Lopez's eventual release might well have been soon, depending on what the Board of Parole Hearings were to decide. Thus, Mr. Lopez's current dangerousness and "dangerousness at the time of possible release" overlap substantially, and the trial court's findings of danger for the former largely cover the latter. As *Gonzalez* notes, "[a] currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*Gonzalez, supra,* 103 Cal.App.5th 215 at p. 228.)

Granted, the trial court here did not explicitly say that it had considered "the safety valve that exists due to the review by the Board of Parole Hearings." (*Gonzalez, supra*, 103 Cal.App.5th at p. 229.) But " '[t]he trial court is not required to state reasons for declining to exercise its discretion under [section] 1385' [citations] and 'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary' [citation]." (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637 (*Brugman*).) Because the record is silent as to whether the trial court considered that factor, we presume the trial court correctly applied the law. And that the Board of Parole Hearings will conduct its own review of Mr. Lopez's danger to public safety is at most relevant, not dispositive. (See *Gonzalez*, *supra*, 103 Cal.App.5th at p. 228, fn. 10 ["We do not suggest that a trial court is permitted to delegate its judgment regarding a defendant's future threat to public safety to the Board of Parole Hearings."].)

In any event, there is no affirmative indication in the record—unlike in *Gonzalez*—that the trial court failed to consider Mr. Lopez's dangerousness at the time of possible release, even assuming that timeframe was materially different than the near

14

term.  Without such an affirmative showing, Mr. Lopez's claim of error fails.  (See *Brugman, supra*, 62 Cal.App.5th at p. 637.)

### E.        Alleged Federal Due Process Violation

In one brief paragraph of his opening brief, Mr. Lopez argues that the trial court's decision not to strike the section 12022.53(d) firearm enhancement violated "his constitutional right to due process."[7]  But Mr. Lopez does not explain exactly how the trial court's decision violates his due process rights.  We generally "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt."  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.)  That is the case here.

We therefore do not grant relief on Mr. Lopez's federal due process claim.

### F.        Reduction of Section 12022.53(d) Firearm Enhancement

Even absent forfeiture, Mr. Lopez's claim that the trial court abused its discretion in not imposing a lesser firearm enhancement does not succeed.

A court abuses its discretion if it makes a sentencing decision without knowing the full scope of its discretion.  (*Tirado*, *supra*, 12 Cal.5th at p. 694.)  But where the record shows that the trial court was aware of its sentencing discretion, remand is unnecessary.  (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228-1229.)

Here, the record shows that the trial court was aware of its power to "decrease" the section 12022.53(d) firearm enhancement to a lesser firearm enhancement, and did not exercise its power to do so.  It was not necessary for the trial court to make explicit findings on this point, as a trial court is presumed to have acted to achieve legitimate sentencing objectives and to have applied the correct law absent contrary evidence.

---

[7] We agree with the People that the trial court did not increase Mr. Lopez's sentence at resentencing, contrary to Mr. Lopez's statement in his opening brief.  As explained above, the trial court reduced the determinate portion of Mr. Lopez's sentence significantly and kept the indeterminate portion the same.

15

(*Carmony, supra*, 33 Cal.4th at pp. 376-377; *People v. Thomas* (2011) 52 Cal.4th 336, 361.)  We see no evidence in the record to suggest that the trial court's decision not to reduce the section 12022.53(d) firearm enhancement was arbitrary, capricious, or patently absurd, so as to result in an abuse of discretion.  (*People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322.)

## III.    DISPOSITION

We affirm the judgment.

KULKARNI, J.*

WE CONCUR:

DANNER, ACTING P.J.

LIE, J.

*The People v. Lopez*
H052380

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.